UNITED STATES DISCTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KENEISHA WASHINGTON,**

*Plaintiff,*

v.

**APPLIED DATA FINANCE, LLC** *and* **TRANS UNION LLC,**

*Defendants.*

Case No:

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Keneisha Washington** ("**Ms. Washington**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Applied Data Finance, LLC**, doing business as **Personify Financial** ("**Applied Data**") and **Trans Union LLC** ("**Trans Union**") (jointly, the "**Defendants**"), stating as follows:

### PRELIMINARY STATEMENT

1. This is an action brought by Ms. Washington against the Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq*. ("**FCRA**"), and against Applied Data for *Breach of Contract*.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction for Plaintiff's FCRA claims arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3. The Defendants are subject to the jurisdiction of this Court pursuant to §

48.193, Fla. Stat., and Fed. R. Civ. P. 4(k).

4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and/ or caused by the Defendants within the Middle District of Florida.

## PARTIES

### Ms. Washington

5. **Ms. Washington** is a natural person residing in the City of Winter Haven, Polk County, Florida.

6. Ms. Washington is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Applied Data

7. **Applied Data**, doing business as Personify Financial, is a Delaware limited liability company, with a principal business address of 15373 Innovation Drive, Suite 380, San Diego, CA 92128.

8. Applied Data's Florida registered agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

### Trans Union

9. **Trans Union** is a Delaware limited liability company, with a principal business address of 555 West Adams Street, Chicago, IL 60661.

10. Trans Union is registered to conduct business in the State of Florida, where its registered agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

11. Trans Union is a *Consumer Reporting Agency* ("**CRA**") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Applied Data Verifies False Information as Accurate

12. In October 2019, Applied Data made a loan to Ms. Washington (the "**Loan**") via the lending platform personifyfinancial.com, a website owned and operated by Applied Data.

13. The Loan carried an annual interest rate exceeding 80%.

14. Applied Data alleged that Ms. Washington had a balance due regarding the Loan (the "**Debt**").

15. Applied Data utilized various means to collect this Debt, including credit reporting to Defendant Trans Union.

16. In July 2024, Applied Data agreed to cease collection of the Debt, eliminate the remaining alleged balance, and request deletion of its tradeline from any CRA to which it reports, which includes Trans Union.

17. Applied Data could have easily submitted an *Automated Universal Datasheet* ("**AUD**") correction to Trans Union, instructing Trans Union to delete the tradelines – a process which typically takes under 48 hours.

18. Alternatively, Applied Data could have reported the status of the accounts as "DA," meaning "delete account," during its next regular in-cycle batch reporting, which would have resulted in Trans Union deleting the tradelines from Ms. Washington's credit file as well, although this could have taken as long as 30 days.

19. Applied Data did neither, despite a contractual obligation to do so.

20. After agreeing to waive the balance, stop collection activity and request deletion of its tradeline in July 2024, Applied Data continued making *new* reports every month to Trans Union, re-alleging the derogatory account information, including the allegation that a past-due balance was owed and the payment status was "charged off," the worst of the nine possible payment ratings which could have been reported.

21. Applied Data continued to make such reports as recently as September 2024.

22. As a result, the tradeline continued to report to Trans Union, and Ms. Washington's credit report reflected a false derogatory account that reported as "In Collection/Charge-off" with a high balance of $1,995. **SEE PLAINTIFF'S EXHIBIT A.**

23. As of July 2024, Applied Data knew that any further collection attempts were prohibited and in violation of its own agreement to cease collection.

24. Despite this, Applied Data continued to falsely report a charged-off debt to Ms. Washington's credit.

25. Ms. Washington's situation was far from unique.

26. Indeed, Applied Data continued to report balances to Trans Union concerning other consumers for whom it had also waived balances and agreed nothing was owed.

27. Applied Data, when reporting its tradeline concerning Ms. Washington to Trans Union, falsely certified the Debt continued to have a balance owed, and was charged off and in collections with a derogatory payment history.

28. In August 2024, Ms. Washington disputed the Applied Data tradeline to Trans Union, stating there was no amount owed and that the creditor (*i.e.*, Applied Data) had agreed to delete the derogatory tradeline from her credit report.

29. Trans Union's automated systems initiated an *Automated Consumer Dispute Verification* Request ("**ACDV**") which was delivered to Applied Data through a system known as e-OSCAR.

30. Applied Data responded to the ACDV, certifying to Trans Union that its information was accurate and required no update, change, or modification.

31. If a data furnisher like Applied Data decides to report disputed information as verified, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016).

32. Zero evidence exists to support the conclusion that Applied Data's reported data was true, and, indeed, could not possibly be true since Applied Data agreed to eliminate the balance in July 2024 and delete the tradeline.

33. As such, Applied Data could not have possibly obtained any, much less sufficient evidence, to support that its reports were accurate.

34. Applied Data could have easily, readily, and objectively determined the balance was $0 and the tradeline should be deleted, as written records of this were in possession of Applied Data.

35. Applied Data's confirmation of accuracy when it obviously was not accurate shows a willful disregard for its investigative duties under the FCRA.

36. At no point did Applied Data so much as report the alleged Debt as "disputed."

### Trans Union Fails to Make Reasonable Investigation

37. Trans Union, upon receipt of Ms. Washington's dispute, was required to make a reasonable investigation into her dispute and report the results of the investigation back to her within 30 days. *See* 15 U.S.C. § 1681i(a)(1)(A).

38. Ms. Washington's dispute – that Applied Data had waived the balance and agreed to delete its tradeline – was readily and objectively verifiable by Trans Union.

39. Nonetheless, Trans Union made no independent investigation whatsoever and simply initiated ACDVs which were sent to Applied Data.

40. As aforementioned, Applied Data verified the information as accurate.

41. Upon receipt of the ACDV responses, Trans Union utilized an automated system which made rudimentary checks of tradeline data between what Applied Data had reported and the data contained in Trans Union's own file on Ms. Washington, *e.g.*, her name, address, date of birth, and Social Security number.

42. This concluded Trans Union's "investigation."

43. Applied Data provided no documents or other evidence to Trans Union which would have indicated the account should still be reporting.

44. In other words, despite a consumer providing a detailed and meritorious dispute, Trans Union viewed this as less reliable than the electronic box being clicked on by Applied Data, indicating the information was verified as accurate, especially considering Trans Union knew Applied Data is a lender which makes loans at interest rates more than five times the legal limit in Florida.

45. For at least the last 40 years, courts in this district have recognized that a CRA cannot rely upon its data furnisher exclusively, when the consumer disputes the accuracy of the furnisher's version of events and provides evidence to the contrary.

46. The CRA must make some independent investigation of its own, "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [data furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985).

47. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's

information directly. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

48. Trans Union was on notice that Applied Data was not reliable.

49. Moreover, Ms. Washington was far from the only consumer to correctly and credibly allege that Applied Data had agreed to waive balances and delete the relevant tradelines.

50. Trans Union was named as a co-defendant in several FCRA lawsuits, all of which alleged Applied Data failed to investigate disputed tradelines regarding similar accounts.

51. Despite direct knowledge of Applied Data's unreliability, Trans Union continued to accept Applied Data's electronic "verification" of disputed accounts as sufficient evidence that their reported information was accurate.

52. Trans Union's dispute resolution systems are heavily tilted in favor of its data furnishers, from whom it receives revenue monthly, and rest on the premises the data furnishers are always right, until categorically proven wrong by the consumer.

53. As a result, consumers like Ms. Washington are left in a scenario where their only way to have their credit report corrected rests on their ability to disprove a negative.

54. Here, Trans Union was provided with information which was readily, easily, and objectively verifiable.

55. Trans Union made no attempt to investigate Ms. Washington's claims, and instead relied solely upon the ACDV confirmation from Applied Data.

56. Other creditors, and potential creditors, of Ms. Washington have received copies of her Trans Union report containing the false Personify Financial tradeline.

57. The presence of a "charged off" balance on Ms. Washington's report caused substantially lower credit scores to be furnished to Ms. Washington's creditors and potential creditors, resulting in denials of credit or approvals at less-favorable terms than she otherwise would have received.

58. In sum, Trans Union grossly failed to maintain reasonable procedures to ensure maximum possible accuracy of the information it sold concerning Plaintiff.

59. Ms. Washington has suffered significant actual damages from Defendants' failures to correct her report, including lost economic opportunities, wasted time, diminished credit scores and credit capacity, and mental anguish and frustration.

60. Trans Union also sold reports concerning Ms. Washington to other parties which contained the false and defamatory Personify tradeline.

61. In September 2024, Ms. Washington made another dispute to Trans Union concerning the Personify tradeline, re-alleging the same facts as in her previous dispute.

62. This time, Trans Union and Applied Data were able to determine the tradeline should be deleted and removed the account data from Ms. Washington's credit file.

63. The fact that Trans Union and Applied Data reached two different conclusions on two different occasions despite being presented with the identical data both times heavily suggests the first investigations by Trans Union and Applied Data were unreasonable.

64. No new information was supplied, or became available, to Trans Union or Applied Data in the intervening time.

65. Ms. Washington has hired the aforementioned law firm to represent her in this matter and has assigned her right to recovery of fees and costs to the firm.

## COUNT I
## APPLIED DATA'S BREACH OF CONTRACT

66. Ms. Washington adopts and incorporates Paragraphs 1 – 65 as if fully restated herein.

67. Applied Data agreed to eliminate the alleged Debt and discharge Ms. Washington from any and all claims regarding the Loan.

68. Applied Data continued to make derogatory reports regarding Ms. Washington *vis-à-vis* its monthly credit reporting to Trans Union.

69. Applied Data not only failed to request deletion from the CRAs to which it reported account information, it continued to insist that the information ***should not be*** deleted when responding to ACDVs sent by Trans Union.

70. As a result, Ms. Washington was damaged, since Trans Union continued to report she had a charged-off $1,995 balance owed to Applied Data after July 2024 when she did not; the appearance of the highly-derogatory information was included

by Trans Union in reports sold to lenders, and potential lenders, and caused direct, actual damages.

71. Despite numerous requests to remediate the issue, Applied Data continued to breach its agreement with Ms. Washington.

72. Applied Data knew, or should have known, it was in breach of its contract with Ms. Washington and could easily foresee that its failures would cause great harm to Ms. Washington.

**WHEREFORE,** Ms. Washington respectfully requests this Honorable Court enter judgment against Applied Data, ordering:

a. Actual damages from Applied Data's breach of contract;

b. The attorney's fees and costs spent enforcing the agreement; and,

c. Such other relief as this Court deems just and proper.

## COUNT II
## APPLIED DATA'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)

73. Ms. Washington adopts and incorporates Paragraphs 1 – 65 as if fully restated herein.

74. Applied Data violated **15 U.S.C. § 1681s-2(b)** when it failed to conduct a reasonable investigation after receiving notice of dispute of the Debt from Trans Union, as any reasonable investigation would have concluded that the account could not be verified as accurate, as Applied Data had signed an agreement which eliminated any alleged balance, and this information was readily and objectively verifiable.

75. Applied Data did not so much as update its reporting to indicate the

disputed, discharged debt was disputed by Ms. Washington.

76. Applied Data's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

77. Applied Data's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Washington.

78. Accordingly, pursuant to 15 U.S.C. § 1681n, Applied Data is liable to Ms. Washington for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Washington respectfully requests this Honorable Court enter judgment against Applied Data, ordering:

a. The greater of statutory damages of $1,000 per incident or Ms. Washington's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT III
## APPLIED DATA'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)
### (Pled in the Alternative to Count II)

79. Ms. Washington adopts and incorporates Paragraphs 1 – 65 as if fully restated herein, and strictly pled in the alternative to Count II.

80. Applied Data violated **15 U.S.C. § 1681s-2(b)** when it failed to conduct a reasonable investigation after receiving notice of dispute of the Debt from Trans Union, as any reasonable investigation would have concluded that the account could not be verified as accurate, as Applied Data had signed an agreement which eliminated any alleged balance, and this information was readily and objectively verifiable.

81. Applied Data did not so much as update its reporting to indicate the disputed, discharged debt was disputed by Ms. Washington.

82. Applied Data's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

83. The conduct, action, and inaction of Applied Data was the result of negligence.

84. Accordingly, pursuant to 15 U.S.C. § 1681o, Applied Data is liable to Ms. Washington for her actual damages, as well as reasonable attorney's fees and costs.

**WHEREFORE,** Ms. Washington respectfully requests this Honorable Court enter judgment against Applied Data, ordering:

a. Ms. Washington's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## COUNT IV
### TRANS UNION'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

85. Ms. Washington adopts and incorporates Paragraphs 1 – 65 as if fully restated herein.

86. Trans Union violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Ms. Washington when Trans Union sold reports which reported a charged-off balance due to Personify Financial, when no balance was owed, and Trans Union knew via Ms. Washington's dispute that no balance was owed.

87. Trans Union has been sued before for identical conduct and is thus aware that its procedures for ensuring accuracy of reports are flawed.

88. Trans Union's conduct was thus willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

89. Accordingly, Trans Union is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Washington's actual damages or statutory damages of $1,000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Washington respectfully requests this Honorable Court enter judgment against Trans Union, ordering:

a. The greater of statutory damages of $1,000 per incident or Ms. Washington's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT V
## TRANS UNION'S NEGLIGENT VIOLATIONS OF THE FCRA, 1 5 U.S.C. § 1681e(b)
### (Pled in the Alternative to Count IV)

90. Ms. Washington adopts and incorporates Paragraphs 1 – 65 as if fully restated herein and strictly pled in the alternative to Count IV.

91. Trans Union violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Ms. Washington when Trans Union sold reports which reported a charged-off balance due to Personify Financial, when no balance was owed, and Trans Union knew via Ms. Washington's dispute that no balance was owed.

92. Trans Union owed Ms. Washington a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Ms. Washington.

93. Trans Union breached this duty when it sold consumer reports

containing false and out-of-date tradeline information on the Personify Financial account.

94. Trans Union thus acted negligently, and Ms. Washington is entitled to her actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

**WHEREFORE,** Ms. Washington respectfully requests this Honorable Court enter judgment against Trans Union, ordering:

a. Ms. Washington's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## COUNT VI
### TRANS UNION'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)

95. Ms. Washington adopts and incorporates Paragraphs 1 – 65 as if fully restated herein.

96. Trans Union violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into a dispute of the Personify Financial tradeline by Ms. Washington, since any reasonable investigation would have concluded that the Personify Financial should be deleted, and this information was readily and objectively verifiable.

97. Trans Union's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

98. Trans Union's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Washington.

99. Accordingly, pursuant to 15 U.S.C. § 1681n, Trans Union is liable to Ms. Washington for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Washington respectfully requests this Honorable Court enter judgment against Trans Union, ordering:

a. The greater of statutory damages of $1,000 per incident or Ms. Washington's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper

### COUNT VII
### TRANS UNION'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)
**(Pled in the Alternative to Count VI)**

100. Ms. Washington adopts and incorporates Paragraphs 1 – 65 as if fully restated herein and pled strictly in the alternative to Count VI.

101. Trans Union violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to

conduct a reasonable investigation into a dispute of the Personify Financial tradeline by Ms. Washington, since any reasonable investigation would have concluded that the Personify Financial should be deleted, and this information was readily and objectively verifiable.

102. Trans Union owed Ms. Washington a legal duty to conduct a reasonable investigation into her disputes.

103. Trans Union breached this duty when it failed to make a reasonable investigation.

104. Trans Union's conduct was thus negligent, and as a result, pursuant to 15 U.S.C. § 1681o, Trans Union is liable to Ms. Washington for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Washington respectfully requests this Honorable Court enter judgment against Trans Union, ordering:

a. Ms. Washington's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Washington hereby demands a jury trial on all issues so triable.

Respectfully submitted on October 9, 2025 by:

**SERAPH LEGAL, P. A.**

/s/ *Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
BMorgan@SeraphLegal.com
2124 W. Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-3434
Fax: 855-500-0705
*Counsel for Plaintiff*


**PLAINTIFF'S EXHIBIT LIST**
A    Ms. Washington's Trans Union Consumer Disclosure via Credit Karma, September 30, 2024, Personify Financial Tradeline - Excerpt